IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA

WAYCROSS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 CASE |
| | ) | No. 18-50584 |
| CHERYL EVANS, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| CHERYL EVANS, | ) | ADVERSARY |
| | ) | PROCEEDING |
| Plaintiff, | ) | No. 24-05003 |
| | ) | |
| v. | ) | |
| | ) | |
| NISSAN MOTOR ACCEPTANCE CO. | ) | |
| LLC f/k/a NISSAN MOTOR | ) | |
| ACCEPTANCE CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant's Motion for Summary Judgment (A.P. ECF No. 62)[1]

(the "Motion"). In connection with the Motion, Defendant also filed a Motion for Judicial

Notice (A.P. ECF No. 64) (the "Motion for Judicial Notice") concerning certain materials

cited in the Motion. Plaintiff filed a Response (A.P. ECF No. 68) (the "Response") opposing

---

[1] Docket citations beginning with "A.P." refer to the docket in the present adversary proceeding, No. 24-05003. All other citations to the docket refer to the docket in the underlying bankruptcy case, No. 18-50584.

the Motion, and Defendant filed a Reply (A.P. ECF No. 74) (the "Reply").[2] Plaintiff did not

respond to or otherwise file any opposition to Defendant's Motion for Judicial Notice, as

such, it will be granted. For the reasons discussed below, the Motion will also be granted.

**BACKGROUND**

### A.    The Complaint

Plaintiff filed the Complaint (A.P. ECF No. 1) (the "Complaint") in this adversary

proceeding after Defendant obtained stay relief as to a 2015 Nissan Quest, VIN:

JN8AE2KPXF9132171 (the "Vehicle")[3] in Plaintiff's underlying bankruptcy case. In her

Complaint Plaintiff "request[s] funds [to be] turned back over to her in the amount of

$16,941.29" from Defendant. (Id. at ¶ 14.) She alleges that this amount consists of $15,692.14

in principal payments and $1,249.15 in interest that she paid to the Chapter 13 Trustee (the

"Trustee") and which the Trustee disbursed to Defendant after the death of her husband,

Henry Evans. (Id.)

Plaintiff "requests these funds [be] turned back over to her because Defendant was

aware and had notice that [Mr. Evans] had passed away, but kept on accepting the funds

for principle [sic] and interest payments that were disbursed to [Defendant] knowing that

---

[2] Plaintiff then filed a sur-reply. (A.P. ECF No. 77.) It did not present any new arguments.
[3] A summary of the relevant background regarding the Vehicle is important and detailed in the undisputed facts section of this Order.

the contract was extinguished after the death of [Mr. Evans]." (Id. at ¶ 15.) Plaintiff alleges that Defendant "should have withdrawn [its] claim . . . and should have stopped accepting payments, since [it] knew [Plaintiff] did not owe [Defendant] money for the vehicle . . ." (Id. at ¶ 16.)

Finally, Plaintiff seeks punitive damages in the amount of $1,000,000.00 because "Defendant essentially stole money from [Plaintiff] by continuously accepting the funds and then in turn filing a motion for relief." (Id. at ¶ 17.) Plaintiff alleges Defendant acted in bad faith by accepting payments until completion of her Chapter 13 Plan (the "Plan") and obtaining stay relief "knowing [Plaintiff] was not [a part] of the contract and had no legal interest in the property." (Id.)

**B.   Defendant's Summary Judgment Motion**

In its Motion, Defendant moves for summary judgment arguing that (1) there is no genuine dispute of material facts and further submits that (2) Plaintiff has failed to plead a cause of action; (3) Plaintiff has failed to allege any damages, has admitted she did not suffer any damages and has retained use and possession of the Vehicle, and, if she did suffer damages, failed to prevent or mitigate such damages by promptly notifying the Court of Mr. Evans's death, moving to continue administration of the case as if Mr. Evans's death had not occurred, amending her Plan after Mr. Evans's death, or promptly pursuing

probate of Mr. Evans's estate; and (4) the voluntary payment doctrine, O.C.G.A. § 13-1-13, precludes any recovery by Plaintiff from Defendant. (<u>See generally</u> A.P. ECF No. 62.)

Defendant asserts that Plaintiff voluntarily made payments to Defendant through her Plan, despite her knowledge that she did not owe the debt on the Vehicle and had only a possessory interest in the Vehicle. (<u>Id.</u> at 14-15.) Therefore, under Georgia's voluntary payment doctrine, Plaintiff cannot recover such payments. (<u>Id.</u> at 16.)

Defendant also argues that Plaintiff has failed to establish a claim for punitive damages, which requires evidence of malicious conduct. (<u>Id.</u> at 18.) It asserts that Plaintiff has not identified under what cause of action she seeks punitive damages and has failed to allege or demonstrate that Defendant acted with malice, deceit, or intent to oppress, as is required under Georgia law for an award of punitive damages. (<u>Id.</u>) Additionally, Defendant states that Georgia law caps punitive damage awards at $250,000, far below Plaintiff's demand for $1,000,000. (<u>Id.</u> at 19-20.)

In connection with the Motion, Defendant also filed its Motion for Judicial Notice (A.P. ECF No. 64). Defendant requests that the Court take judicial notice of four documents: (1) the docket for the Coffee County Probate Court Estate No. 2023-178, <u>In re the Estate of Henry Evans, Deceased</u>; (2) the Petition for Letters of Administration filed in Estate No. 2023-178 on December 4, 2023; (3) the Order Appointing Administrator entered in Estate No. 2023-178 on February 19, 2024; and (4) the Letters of Administration issued

to Plaintiff in Estate No. 2023-178 on February 19, 2024, all of which are cited in its Motion. Defendant also filed its Statement of Undisputed Material Facts (A.P. ECF No. 63) as required by Local Rule 56.1.

### C.   Plaintiff's Response

In her Response, Plaintiff argues that summary judgment is not appropriate because (1) there are material facts in dispute; (2) Plaintiff has pleaded claims against Defendant for quasi-contract and unjust enrichment, among other things; (3) Defendant caused damage to Plaintiff that justifies punitive damages; and (4) Plaintiff was required to make her Plan payments and therefore not voluntarily paying Defendant. (See A.P. ECF No. 68.)

Plaintiff first attempts to place several facts in dispute. To begin, she contends *she and Mr. Evans* were co-borrowers on the loan for the Vehicle. Plaintiff alleges that both she and Mr. Evans (i) applied for a loan to purchase the Vehicle; (ii) entered into the contract for the purchase of the Vehicle; and (iii) agreed to make 75 monthly payments of $676.45, beginning December 17, 2015, totaling $50,733.75, for the Vehicle. (Id. at 1-2.) She also seems to argue that there is a genuine issue of material fact because she, not Mr. Evans, was the true owner of the Vehicle because she enjoyed the use and possession of the Vehicle and paid the debt owed in full under her Plan. (Id. at 8.)

Plaintiff next argues that a genuine issue of material fact exists as to whether she "was on the contract [for the Vehicle], or if her information was used to obtain credit

approval." (Id. at 18.) She goes on to state that "[t]here are questions regarding the authenticity of the credit application and contract" for the Vehicle, because it was "surprising" Mr. Evans would have been approved based only on his Social Security income and small rental income. (Id.) Plaintiff calls the legitimacy of the credit application "questionable" and suggests "multiple contracts were signed." (Id.)[4]

Plaintiff further argues that the proof of claim, including the contract, Defendant filed in her bankruptcy case was "incorrect" because she should have been listed **with Mr.**

---

[4] Plaintiff also appears to challenge the declaration of Jessica Bustos, a loss recovery supervisor for Defendant. (A.P. ECF No. 65.) In particular, Plaintiff challenges paragraphs 3 and 4 of the declaration, which provide that (1) on November 10, 2015, Mr. Evans submitted a credit application to Tenneson Nissan for financing for the Vehicle and (2) on the same date, Mr. Evans entered into a retail installment sale contract for the purchase of the Vehicle and the contract provided that Mr. Evans would pay 75 monthly payments of $676.45 beginning December 17, 2015, for payments totaling $50,733.75. (Id. at 2-3.) Paragraph 4 of the declaration also provides that the contract was subsequently assigned to Defendant. (Id. at 3.)

Plaintiff argues that Ms. Bustos was not an employee at Tenneson Nissan and "does not know specific details of what information was used to obtain the credit approval. She does not know if anything was falsified . . . or if there was another contract that was initially signed." (A.P. ECF No. 68 at 19.)

Ms. Bustos need not have been an employee at Tenneson Nissan to be competent to testify on these matters, as they are official business records maintained by Defendant that she has personally reviewed. She declares only that Mr. Evans submitted a credit application and entered into a retail installment sale contract for the purchase of the Vehicle and attaches those documents in support of the Motion. Ms. Bustos further declares that the information described and attached to the declaration "is found in the business records of [Defendant], which records are maintained by [Defendant] in the ordinary course of business activities . . . I have access to [the records] and have knowledge of how they are maintained. Based upon these records, I have gained knowledge of the facts set forth in this affidavit and, if called upon as a witness to testify, could and would competently testify as to those facts, under the penalty of perjury." (A.P. ECF No. 65 at 2.) Accordingly, the declaration of Ms. Bustos and the credit application and contract are admissible evidence. See Fed. R. Evid. 803(6) (records kept in the regular course of business are admissible as evidence); Rager v. Augustine, 760 F. App'x 947, 951 (11th Cir. 2019) (finding declarations based upon declarants' personal knowledge after review of official business records appropriate support for summary judgment motion). Indeed, Plaintiff does not argue that they are not. Rather, it seems she is attacking their credibility, but with only speculation, rather than with evidence.

*Evans* as a borrower on the contract for the Vehicle and as a title holder on the lien and title documents. (<u>Id.</u> at 2.) Plaintiff disputes the accuracy of the contract for the Vehicle that was attached to the proof of claim and claims it "should have shown that Mr. Evans and [Plaintiff] signed the contract." (<u>Id.</u>) Plaintiff contends the "contract provided was not the original contract from Tennison [sic]," because Plaintiff "do[es] not believe Mr. Evans was eligible to purchase the [Vehicle] on his own without [Plaintiff]." (<u>Id.</u> at 3.)

Plaintiff next posits that a genuine issue of material fact exists as to whether her actions contributed to her damages. She did not file a Suggestion of Death in her bankruptcy case about the death of Mr. Evans until almost two years after it happened because "she thought she was listed on the contract" for the Vehicle. (<u>Id.</u> at 5.) She reasons that because she was "under the impression" that she was a co-owner of the Vehicle and was liable for the debt owed on the Vehicle, she did not move to continue the case as if Mr. Evans's death had not occurred under Federal Rule of Bankruptcy Procedure 1016 or move to modify her Plan. (<u>Id.</u> at 12.) When she apparently became "aware" that she was not a co-owner of the Vehicle, she filed a petition in probate court on December 4, 2023, to probate the estate of Mr. Evans and transfer the title of the Vehicle into her name. (<u>Id.</u> at 12-13.) Her efforts failed there because one of Mr. Evans's heirs would not consent to the transfer of title. (<u>Id.</u> at 13.) Plaintiff contends that Defendant was "aware the debt only belonged to Mr. Evans" and the Vehicle was "titled solely in Mr. Evans['s] name" and kept

accepting payments from Plaintiff even after learning of Mr. Evans's death. (Id. at 10-11.) Plaintiff insists that "Defendant is essentially blaming Plaintiff for not taking actions in her case" and accuses Defendant of not taking responsibility for accepting payments after Mr. Evans's death. (Id. at 11.) Plaintiff explains she did not take "actions" in her bankruptcy case—such as modifying her Plan—because she was "under the assumption" that the Vehicle title was in both her and Mr. Evans's names. (Id.)

Plaintiff also claims that a genuine issue of material fact exists "as to whether Plaintiff has an enforceable right to claim recovery of actual damages for the funds that Defendant accepted after the death of Mr. Evans." (Id. at 14.) In support of this, Plaintiff contends a quasi-contract existed between Plaintiff and Defendant because Plaintiff made payments on the Vehicle, which were accepted by Defendant. (Id. at 15.) Plaintiff argues "[t]hese actions enriched Defendant wrongfully," and "Plaintiff's cause of action for recovery of damages is unjust enrichment." (Id.) Plaintiff states that Defendant was "unjustly enriched" because Plaintiff "paid for the [V]ehicle in the bankruptcy case in full and the [V]ehicle was ultimately taken away by the relief from the automatic stay being granted." (Id. at 15-16.) Plaintiff argues that Defendant received a benefit through the monthly monetary payments and "ended up getting both the payments and the collateral," while Plaintiff "paid for a good and . . . received nothing in return." (Id. at 16.) Plaintiff

AO 72A
(Rev. 8/82)

argues that at least after Defendant learned of the death of Mr. Evans, Defendant "had an obligation to quit accepting payments" from the Trustee for the Vehicle. (Id. at 16.)

Plaintiff also disputes that she has not suffered any damages caused by Defendant. (Id. at 5.) Although she still retains control and possession of the Vehicle, she alleges that it was damaged in Hurricane Helene after the Complaint was filed and is not drivable, although she does not explain how Defendant caused this damage. (Id. at 4.) She states that she

> suffer[ed] punitive damages due to the fact that she paid money for a vehicle that she presently cannot drive, [Defendant] will not retain the [V]ehicle, nor will [Defendant] give Plaintiff her money back. Defendant filed a motion for relief from stay while continuing to accept the funds from the [T]rustee for the [V]ehicle . . . [D]efendant was granted . . . relief from stay[] and would not pick the [V]ehicle up. Presently, Plaintiff has a non-running vehicle devaluing her property, she has to struggle with transportation, and she lost out on a tremendous amount of money.

(Id. at 5.)

Plaintiff then argues that she did not make voluntary payments to Defendant because she had a legal obligation to make her Plan payments. (Id. at 14.) If she did not make her Plan payments, she would face dismissal of her chapter 13 case. (Id.) Plaintiff argues that she was not "specifically paying Defendant voluntarily, she was sending payments each month to the [T]rustee and then the funds were then disbursed by the [T]rustee to multiple creditors," including Defendant. (Id.)

Plaintiff also purports to dispute—without explanation—that the Court found in Plaintiff's underlying bankruptcy case that Defendant was entitled to relief from the automatic stay, as Plaintiff had only a possessory interest in the Vehicle, and the debt owed to Defendant had not been satisfied. (Id. at 5.)

### D.   Defendant's Reply

In its Reply, Defendant asserts that Plaintiff has "attempt[ed] to cure the defects in her Complaint" and "create[d] a fiction" that she was a party to the credit application and contract for the Vehicle, offering no evidence in support. (A.P. ECF No. 74 at 1.) It asserts that it has met its burden to establish that there are no genuine issues of material fact and at its core, this adversary proceeding is an attempt to seek damages "because the Court granted [Defendant]'s Motion for Relief from Stay" in the underlying bankruptcy case. (Id. at 2.)

Defendant states that Plaintiff has tried, without evidence, to create an issue of fact by claiming she did not know she was not a co-owner of the Vehicle, but an unsupported issue is not a genuine issue of fact. (Id. at 5-6.) Plaintiff knew that she was not a co-owner of the Vehicle since at least September 12, 2018, when Defendant filed its proof of claim in her bankruptcy case. (Id. at 6.) Additionally, Defendant argues Plaintiff's payments to Defendant were voluntary because she could have modified her Plan at any time to cease payments to Defendant and chose not to do so. (Id. at 3-4.)

Finally, Defendant argues that Plaintiff cannot cure her failure to plead a cause of action in a response to the Motion. (Id. at 8-9.) It states that Plaintiff never stated a cause of action for unjust enrichment, and even if she had, her claim fails because the evidence shows that Plaintiff received a benefit for her payments to Defendant—the continued possession and use of the Vehicle, which she still maintains. (Id. at 9-10.)

Defendant also largely repeated its initial arguments in the Motion regarding Plaintiff's failure to mitigate damages and her failure to establish a claim for punitive damages. (Id. at 10-15.)

## UNDISPUTED FACTS[5]

Plaintiff and her husband, Henry Evans, filed their chapter 13 bankruptcy petition on September 7, 2018. (See ECF No. 1.)[6] Defendant was listed as a creditor on the

---

[5] These facts are taken from Defendant's Statement of Undisputed Facts (A.P. ECF No. 63) and Plaintiff's Response (A.P. ECF No. 68), to the extent there is evidence in the record to support the statements found therein, and the docket and claims register in the underlying case, of which the Court takes judicial notice.

[6] Pursuant to Federal Rule of Evidence 201(c)(1), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9017, the Court takes judicial notice of the records in Plaintiff's underlying bankruptcy case. Several of such records are referenced in the parties' briefs and are relevant to the issues before the Court. Courts may take judicial notice of court documents that are matters of public record, including its those in its own public records. See Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014); see also Callier v. Outokumpu Stainless USA, LLC, No. 21-00521-JB-N, 2022 WL 885037, at *3 (S.D. Ala. Mar. 24, 2022) ("[A] court may take judicial notice of the undisputed matters of public record, i.e., the fact that hearings and prior proceedings took place, and what was said in those proceedings, but it may not take judicial notice of disputed facts stated in public records for their truth."); Singer Asset Finance Co., LLC v. Mullins (In re Mullins), 360 B.R. 493, 498-99 (Bankr. W.D. Va. 2007) (taking judicial notice of "the records in the Debtor's bankruptcy case" in related adversary proceeding).

bankruptcy petition with a claim secured by the Vehicle. (Id. at 21.) Prior to the bankruptcy filing, Mr. Evans purchased the Vehicle pursuant to a retail installment contract executed on November 10, 2015. (Claim No. 2 at 6-10; A.P. ECF No. 65-2.) The Vehicle was owned by Mr. Evans and titled in his name only. (Claim No. 2 at 6-10.) Defendant timely filed a proof of claim with a copy of the installment contract and Vehicle's title attached. (Claim No. 2.)

On June 3, 2022, the Evanses' bankruptcy counsel filed a Suggestion of Death (ECF No. 68) informing the Court and interested parties that Mr. Evans had passed away on July 17, 2020. The Bankruptcy Court Clerk's Office subsequently served a Notice of Suggestion of Death (ECF No. 69) on the entire mailing matrix in the bankruptcy case informing all parties in interest that Mr. Evans would be dismissed from the case unless a written request to be heard was submitted on or before June 29, 2022. No request to be heard was submitted to the Court and Mr. Evans was dismissed from the case on July 5, 2022. (ECF No. 75.) The dismissal order stated that Mr. Evans's creditors were "at liberty to pursue its their remedies" against him. (Id.)

After the dismissal of Mr. Evans, Plaintiff continued making payments on the Vehicle pursuant to the terms of the confirmed Plan (ECF No. 2).[7] The Plan provided that

---

[7] The Plan was confirmed on December 18, 2018, prior to Mr. Evans's death and dismissal from the case. (ECF Nos. 2, 20.)

Defendant's secured claim in the amount of $30,557.10 would be bifurcated pursuant to 11 U.S.C. § 506 into secured and unsecured portions. (Id.) The secured portion was valued at $22,025.00 to be paid at 5% interest. (Id.) The remaining $8,532.10 of Defendant's claim was unsecured. (Id.) The Plan was never amended or modified. (A.P. ECF 63 at 3; A.P. ECF No. 68 at 3.)

About seven months after Mr. Evans's dismissal from the bankruptcy case, Defendant filed a motion for stay relief as to the Vehicle on February 28, 2023. (ECF No. 80.) The motion for relief was continued numerous times, with consent of the parties, to allow Plaintiff to probate the estate of Mr. Evans. The Court granted Defendant stay relief as to the Vehicle from the bench on April 23, 2024, and an order lifting the stay was entered on July 11, 2024. (ECF No. 123.) In granting stay relief, the Court found, among other things, that Plaintiff had only a possessory interest in the Vehicle and upon dismissal of Mr. Evans, Defendant was no longer bound by the terms of the Plan, as it was a creditor of Mr. Evans alone. (Id. at 7-10.) The Court concluded that dismissal of Mr. Evans ended the bifurcated treatment of Defendant's claim—because it was a claim against Mr. Evans alone—and there was still a balance owed to Defendant when it obtained stay relief. (Id. at 9-10.) The Court also found that it was undisputed that Plaintiff and Defendant never had any contractual relationship. (Id. at 7.)

AO 72A
(Rev. 8/82)

Plaintiff received her discharge on August 28, 2024. (ECF No. 126.) The Trustee's Final Report and Account indicates that the secured portion of Defendant's claim, as modified by the Plan, was fully paid. (ECF No. 127 at 2.) As of the date of this Order, Plaintiff still has control and possession of the Vehicle. (A.P. ECF No. 68 at 5.)

## CONCLUSIONS OF LAW

**I.**     **The Motion for Judicial Notice Will Be Granted.**

Defendant's Motion for Judicial Notice of four documents related to the probate case of the estate of Henry Evans will be granted. Pursuant to Federal Rule of Evidence 201(c)(1), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9017, a court may take judicial notice of a fact that is not subject to reasonable dispute because it is generally known within its territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

After consideration, the Court will take judicial notice of the fact of the following publicly available probate records maintained by the Coffee County Probate Court: (1) the docket for the Coffee County Probate Court Estate No. 2023-178, In re the Estate of Henry Evans, Deceased; (2) the Petition for Letters of Administration filed in Estate No. 2023-178 on December 4, 2023; (3) the Order Appointing Administrator entered in Estate No. 2023-178 on February 19, 2024; and (4) the Letters of Administration issued to Plaintiff in Estate

No. 2023-178 on February 19, 2024. The Court finds that these documents are maintained by the Coffee County Probate Court and there appears to be no dispute over the accuracy of the fact that these documents were filed or issued and the dates on which they were filed or issued; Plaintiff has not objected to the Motion for Judicial Notice; and Plaintiff has in fact even cited to the Petition for Letters of Administration and the Letters of Administration in her Response. (See A.P. ECF No. 68-7 at 7-10, 14.)

**II.    Summary Judgment**

    **a.    Summary Judgment Standard**

Summary judgment is appropriate only where the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence and make any factual inferences from the evidence in the light most favorable to the non-movant when considering a motion for summary judgment. Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1263-64 (11th Cir. 2010). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts

for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007); see also Chadwick v. Bank of America, N.A., 616 F. App'x 944, 950 n.3 (11th Cir. 2015) (finding "[mortgagor's] vague, self-serving testimony that he spoke with an unnamed [mortgage company's] representative on some unspecified date, and the representative told him not to send [mortgage company's] any money, is insufficient to establish a genuine issue of fact as to whether [mortgage company's] misrepresented its intentions to [mortgagor]").

"Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record." Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996); see also Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) ("An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC, 702 F.3d 1312, 1316 (11th Cir. 2012) (quotations omitted).

The movant bears the initial burden to demonstrate to the court the basis for its motion for summary judgment and identify those portions of the pleadings which it believes show an absence of any genuine issue of material fact. Shiver v. Chertoff, 549 F.3d 1342, 1343 (11th Cir. 2008). The movant meets this burden by showing that the non-moving party has failed to present appropriate evidence in support of an element of the case on which the non-moving party bears the burden of proof at trial. Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). The burden then shifts to the non-movant to establish, by going beyond the pleadings, that a genuine issue of material fact exists. Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file" demonstrate that there is a genuine dispute of material fact) (quotations omitted); United States v. Travelers Cas. & Surety Co. of America, CV 118-210, 2021 WL 3824834, at *2 (S.D. Ga. Aug. 26, 2021) ("The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint . . . the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56."). "A mere scintilla of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary

AO 72A
(Rev. 8/82)

judgment." <u>Garczynski v. Bradshaw</u>, 573 F.3d 1158, 1165 (11th Cir. 2009) (quotations omitted).

> **b.   Defendant Has Satisfied its Burden Under Rule 56, But Plaintiff Has Not Presented a Genuine Factual Dispute in Response.**

As a preliminary point, the Court will address Plaintiff's attempts to put material facts in genuine dispute. Here, Defendant has submitted its Statement of Undisputed Material Facts and properly identified portions of pleadings, depositions, and discovery-related materials that demonstrate an absence of dispute as to a genuine issue of material fact. Fed. R. Civ. P. 56(b); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).[8] Therefore, the burden shifts to Plaintiff to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

After reviewing the evidence included in the record and weighing all factual inferences in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to carry her burden on this issue. Plaintiff supplies ***no support*** whatsoever for her version of facts in response to Defendant's Statement of Undisputed Material Facts. Plaintiff may not purport to dispute facts without actually controverting them by citing to a particular part of the record or showing that Defendant's citation does not establish the

---

[8] The Court has independently reviewed Defendant's material facts and concludes that they are supported by the evidentiary record. <u>Reese v. Herbert</u>, 527 F.3d 1253, 1269 (11th Cir. 2008) (noting that a district court considering a motion for summary judgment must ensure that the material facts are supported by evidentiary materials, even if they are admitted or unopposed).

absence of a genuine dispute or that Defendant cannot produce admissible evidence to support its fact. Fed. R. Civ. P. 56(c)(1). "The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor." ConSeal Int'l Inc. v. Neogen Corp., 488 F. Supp. 3d 1257, 1265-66 (S.D. Fla. 2020) (citing Shiver v. Chertoff, 549 F.3d 1342, 1343 (11th Cir. 2008)). In this case, Plaintiff only makes speculative allegations without providing anything else, let alone supporting evidence upon which a reasonable jury could find in her favor.

In considering Plaintiff's first assertion that there is a dispute over whether she was a co-borrower and liable for the debt on the Vehicle, the Court finds that there is no actual dispute as to this fact. The evidence in the record shows she was not. The installment contract attached to Defendant's proof of claim (Claim No. 2) and then again to the Amended Declaration of Jessica Bustos (A.P. ECF No. 65-2) clearly indicate that only Mr. Evans was indebted to Defendant and Plaintiff has failed to point to any record evidence to place that fact in actual dispute.[9]

---

[9] The Court also notes that in her Complaint, Plaintiff alleges that Defendant continued to accept Plaintiff's payments while "knowing that she was not apart [sic] of the contract." (A.P. ECF 1 at ¶ 17.)

As to Plaintiff's argument that there is an actual dispute of fact over whether her information was used in the credit application for the loan on the Vehicle, again, the evidence in the record shows it was not. The credit application submitted by Defendant as an attachment to Amended Declaration of Jessica Bustos clearly indicates that Mr. Evans alone applied for credit. (A.P. ECF No. 65-1.) Plaintiff has failed to point to any record evidence to place that fact in dispute.

Moreover, there is no actual dispute of fact over the legitimacy or authenticity of the credit application or contract for the Vehicle. Although the Plaintiff suggests there is, she points to no evidence in the record to support such a suggestion.[10] Cordoba v. Dillard's Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of

---

[10] It is worth noting that at no time did Plaintiff object to Defendant's claim in her underlying bankruptcy case. A claim or interest, properly filed, "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). No party in interest objected to Defendant's proof of claim in Plaintiff's bankruptcy case, so the claim was—and still is—deemed allowed. Furthermore, a properly filed proof of claim is *prima facie* evidence of the claim's validity and amount, and to overcome such evidence, an objecting party must present evidence "to negate a fact set forth in the proof of claim." Walston v. PYOD, LLC (In re Walston), 606 F. App'x 543, 548 (11th Cir. 2015); Fed. R. Bankr. P. 3001(f).

The Court can make no other findings concerning the validity or amount of the proof of claim because Plaintiff's challenges to it are not properly before the Court. To the extent Plaintiff is attempting to challenge the proof of claim for the first time in her Response, it is improper and will not be considered. Davis v. Cothern, 482 F. App'x 495, 497 (11th Cir. 2012) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). The proper way to challenge a proof of claim is by objection or by properly stating a claim to "determine the validity, priority, or extent of a lien or other interest in property" in a complaint. See Fed. R. Bankr. P. 3007(a) (outlining procedure for objecting to a claim); Fed. R. Bankr. P. 7001(b) (an adversary proceeding may be initiated to determine the validity, priority, or extent of a lien or other interest in property). Plaintiff has done neither of these things.

fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment."). Simply declaring a fact in dispute does not place it in genuine dispute.

Plaintiff also claims that a genuine issue of material fact exists regarding whether her actions contributed to her damages. (A.P. ECF No. 68 at 12.) To the extent this is true, the Court addresses Defendant's failure to mitigate defense _infra_ at Part II(e).

Finally, Plaintiff argues that there is a genuine issue of material fact as to whether Plaintiff has "an enforceable right to claim recovery of actual damages for the funds that Defendant accepted after the death of Mr. Evans." (Id. at 14.) This assertion is puzzling. It seems that Plaintiff is arguing that there is a genuine issue of material fact as to whether her unjust enrichment claim succeeds. Rather than directing the Court's attention to any evidence to call into dispute a fact or the existence of an element of the claim, Plaintiff is arguing the viability of the claim itself. As such, Plaintiff has not presented a dispute of material fact.

Having addressed Plaintiff's failure to identify genuine disputes of material fact, the Court will now turn to consideration of Defendant's arguments for summary judgment.

    **c.**    **Defendant is Entitled to Summary Judgment Because Plaintiff Has Failed to Plead a Cause of Action.**

Defendant asserts it is entitled to summary judgment because Plaintiff has failed to plead a cause of action. The Court agrees.

Plaintiff's Complaint fails to state any cause of action entitling Plaintiff to relief. A properly drafted complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008.

As the foundation for the majority of her claims, Plaintiff vaguely alleges that Defendant accepted payments from Plaintiff after "the contract was extinguished after the death of Henry Evans" and should "turn[] back over" certain funds Plaintiff paid to Defendant, with no citation or reference to any statutory authority or other basis entitling her to relief. (A.P. ECF No. 1 at ¶ 14-15.) This does not comply with Rule 8 pleading standards. As her remaining claim for punitive damages, Plaintiff alleges that Defendant acted in bad faith and "essentially stole money from her by continuously accepting the funds and then in turn filing a motion for relief" after the secured portion of the debt had been paid and "knowing that she was not apart [sic] of the contract and had no legal interest in the property." (Id. at ¶ 17.) As discussed more fully below, based on the allegations in the Complaint, it is impossible to determine what cause of action Plaintiff is trying to allege, let alone the elements of such unknown cause of action. Cramer v. State of

Fla., 117 F.3d 1258, 1261 (11th Cir. 1997) (describing complaint as a shotgun pleading where it was "so disorganized and ambiguous that it is almost impossible to discern precisely what it is that these appellants are claiming"); Anderson v. Dist. Bd. of Trs. of Central Fla. Cmty. College, 77 F.3d 364, 366 (11th Cir. 1996) (explaining that a properly drawn complaint "will present each claim for relief in a separate count, as required by [Federal Rule of Civil Procedure] 10(b), and with such clarity and precision that the defendant will be able to discern what the plaintiff is claiming and to frame a responsive pleading"). Plaintiff is represented by counsel who should be able to clearly articulate a cause of action in a complaint. Mena v. McArthur Dairy, LLC, 352 F. App'x 303, 309 (11th Cir. 2009) ("Because [plaintiff] was represented by counsel throughout the duration of this case, his pleadings and submissions are not entitled to liberal construction."); NCC Bus. Servs., Inc. v. Lemberg & Assocs., LLC, No. 3:13-CV-795-J-39MCR, 2014 WL 5514247, at *1 (M.D. Fla. July 23, 2014) ("Plaintiff in this case is represented by counsel and thus, is not entitled to a liberal construction of its complaint or [] a more gentle review of its pleadings.").

Even liberally construing the Complaint and assuming that Plaintiff is attempting to state a claim for turnover under 11 U.S.C. § 542, she still fails, as Plaintiff did not plead facts in support of each of the elements of a claim for turnover. 11 U.S.C. § 542; Milledge v. Carolina Acceptance (In re Milledge), 639 B.R. 334, 343-44 (Bankr. D.S.C. 2022) (the elements of a turnover claim are: (1) during the case, (2) an entity other than a custodian

(3) was in possession, custody, or control of property that a trustee could use, sell, or lease under 11 U.S.C. § 363 or that a debtor may exempt under 11 U.S.C § 522, and (4) that such property is not of inconsequential value or benefit to the estate). She alleges no facts showing that Defendant "is in possession, custody, or control of property that a trustee could use, sell, or lease under 11 U.S.C. § 363 or that a debtor may exempt under 11 U.S.C § 522." Importantly, Plaintiff also makes no argument that she has stated a claim of turnover in her Response. Instead, she argues that she stated a claim for unjust enrichment.

Further, Plaintiff's attempt to raise a claim for unjust enrichment for the first time in her Response to the Motion is improper and the Court need not consider it. Gilmour v. Gates, McDonald, & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (the correct way to assert a claim after a complaint is filed is to move for leave to file an amended complaint). As discussed, Plaintiff did not state a claim for unjust enrichment in her Complaint. Defendant had no notice of an unjust enrichment claim and Plaintiff may not be ambush Defendant with one at this late stage of the proceeding in a response to a summary judgment motion.

Plaintiff has also failed to state a claim for punitive damages because she failed to state a substantive tort claim from which a punitive damages claim may derive. Plaintiff does not specify any basis for the punitive damages claim, so it is unknown whether it is based on Georgia law, another state's law, or federal law. In any event, in Georgia, "awards of punitive damages and attorney fees are derivative of underlying claims, where those

AO 72A
(Rev. 8/82)

claims fail, claims for punitive damages and attorney fees also fail." <u>Popham v. Landmark</u>

<u>Am. Ins. Co.</u>, 340 Ga. App. 603, 612 (2017); <u>see also</u> <u>OFS Fitel, LLC v. Epstein, Becker &</u>

<u>Green, P.C.</u>, 549 F.3d 1344, 1357 n.8 (11th Cir. 2008) ("[U]nder Georgia law, neither an

O.C.G.A. § 13-6-11 attorney's fee claim nor an O.C.G.A. § 51-12-5.1 punitive damages claim

can survive without an award of relief on an underlying claim.").

These failures alone are grounds for granting summary judgment in favor of

Defendant. A movant for summary judgment meets its burden by showing that the non-

moving party has failed to present appropriate evidence in support of an element of a claim

on which the non-moving party bears the burden of proof at trial. <u>Moton v. Cowart</u>, 631

F.3d 1337, 1341 (11th Cir. 2011). Defendant has shown that Plaintiff has failed to state any

claim or support the elements of any claim. Accordingly, summary judgment in

Defendant's favor is appropriate.

### c.    The Voluntary Payment Doctrine Bars Plaintiff's Recovery for Unjust Enrichment.

Even if Plaintiff had properly stated a claim for unjust enrichment against

Defendant for payments she made for the Vehicle, the voluntary payment doctrine

precludes recovery of voluntary payments made "through ignorance of the law or where

all the facts are known and there is no misplaced confidence and no artifice, deception, or

fraudulent practice used by the other party." O.C.G.A. § 13-1-13. Such payments "cannot

be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property." Id.

> [A] payment is not made under compulsion or duress, but will be treated as voluntary, unless the party making payment does so to prevent the immediate seizure of his goods or the arrest of his person . . . Furthermore, the doctrine appears to be that if the law affords to the person from whom the payment is exacted an immediate and adequate remedy to resist payment, he can not be said to have acted under compulsion, if, neglecting to avail himself of such remedy, he elects to make the payment demanded of him.

Pew v. One Buckhead Loop Condo. Ass'n, 305 Ga. App. 456, 461 (2010) (quoting Darby v. City of Vidalia, 168 Ga. 842, 842 (1929)); see also Estate of Crook v. Foster, 333 Ga. App. 36, 39-40 (2015) ("[O]ne who makes a gift or voluntarily pays money which she knows she does not owe confers a benefit, but she is not entitled to restitution."). Accordingly, if a payor "has an opportunity to refuse payment yet declines to do so, he cannot later seek to recover those payments." Candice Bar v. Lile, No. 1:20-cv-4776-TCB, 2021 WL 2470453, at *5 (N.D. Ga. Apr. 5, 2021). Critically, "[t]he party seeking to recover payment bears the burden of showing that the doctrine does not apply." CB Lending, LLC v. Strategic Prop. Consulting Grp., LLC, 353 Ga. App. 114, 118 (2019) (citing Pew, 305 Ga. App. at 461).

The voluntary payment doctrine "applies both to one who pays money with knowledge of all the facts and to one who pays by mistake without a valid reason for failing

to ascertain the truth—or, in other words, to cases involving both actual and constructive knowledge on the part of the payor." Applebury v. Teachers' Retirement System of Ga., 275 Ga. App. 194, 195 (2005) (citing Gulf Life Ins. Co. v. Folsom, 256 Ga. 400, 401 (1986)); see also Kuchenmeister v. HealthPort Technologies, LLC, 309 F. Supp. 3d 1342, 1347 (N.D. Ga. 2018) (voluntary payment doctrine precludes unjust enrichment claim where plaintiff pays an invoice with knowledge of an overcharge or even where plaintiff did not know but had the ability to discover such overcharge); Tura v. The White Oak Grp., Inc., No. 1:07-CV-0379-JOF, 2008 WL 4280363 at *11 (N.D. Ga. Sept. 15, 2008) ("Georgia courts do not require a plaintiff to have actual knowledge of all of the facts, so long as the payer had constructive knowledge of the material facts."); Fitzgerald Water, Light & Bond Comm'n v. Shaw Indus., Inc., 270 Ga. App. 68, 70 (2004) ("[E]ven though [Defendant] claims that it lacked actual knowledge of the rates it was charged, it had the means of such knowledge at its disposal.") (internal quotations omitted); Liberty Nat'l Life Ins. Co. v. Radiotherapy of Ga., P.C., 252 Ga. App. 543, 546-47 (2001) (voluntary payment doctrine applies "to one who pays by mistake without a valid reason for failing to ascertain the truth"). "The issue of what is a valid reason for failing to ascertain the truth is ordinarily a question for the jury." Gulf Life Ins. Co. v. Folsom, 256 Ga. 400, 404 (1986).

Defendant argues that any recovery by Plaintiff against it is barred because Plaintiff voluntarily made the payments at issue. Defendant is correct. While Defendant has

invoked the voluntary payment doctrine, it is ultimately Plaintiff's burden to prove that it does not apply. She has not done so.

The uncontroverted evidence shows that Plaintiff voluntarily made payments to the Trustee to disburse to creditors, including Defendant, under her confirmed Plan. There is no evidence that Plaintiff made payments on the Vehicle because of "artifice, deception, or fraudulent practice" by Defendant. See O.C.G.A. § 13-1-13. Nor has she shown that the payments were made under duress, such as "to release [the Vehicle] from detention or to prevent an immediate seizure of [the Vehicle]." Id.

Although Plaintiff alleges that she apparently "thought" and "assumed" she was a co-owner of the Vehicle, she has not given any explanation for this mistake of fact. (A.P. ECF No. 62-2 at 10 (Pl.'s Resp. to Interrog. No. 6)); (A.P. ECF No. 62-2 at 11 (Pl.'s Resp. to Interrog. No. 16)). Mistake of fact is a defense to the voluntary payment doctrine only where there is "a valid reason for failing to ascertain the truth." Applebury, 275 Ga. App. at 195; see also Legum v. Blue Cross Blue Shield Healthcare Plan of Ga., Inc., No. 1:09-CV-558-BBM, 2009 WL 10669646, *5 (N.D. Ga. Nov. 17, 2009) (finding voluntary payment doctrine applied where plaintiff had at least constructive knowledge of all material facts and offered no explanation for his company's failure to notice overpayments and contact defendant about them for more than a year); Robbins v. Scana Energy Marketing, Inc., No. 1:08-CV-640-BBM, 2008 WL 7724171, at *5 (N.D. Ga. June 13, 2008) (finding voluntary

payment doctrine applied where natural gas customer made payments and rates at issue "were clearly within the public domain and readily accessible to Plaintiffs"). The record in this case shows that Plaintiff has given *no* reason for failing to ascertain the truth. Further, there is no allegation, let alone evidence, that Plaintiff did not have access to the proof of claim[11] showing that she was not liable for the debt on the Vehicle or did not have any other means of accessing the loan and title documents for the Vehicle, such as an original copy in her possession.

Plaintiff argues that the payments to Defendant were not voluntary because she was legally obligated to make them in the form of her Plan payments. Although she was legally obligated to make her Plan payments, the Court does not consider Plaintiff's chapter 13 Plan payments, to the extent they included amounts disbursed to Defendant, to be involuntary under the circumstances of this case. Plaintiff essentially argues that she created a legal obligation to Defendant by relying on the confirmation order and her own inaction by failing to modify her Plan to reduce her Plan payments after the death of Mr. Evans. The Court cannot ignore that the uncontroverted evidence shows that Plaintiff had *no underlying legal obligation* to Defendant—the Plan provided for payment of Defendant's claim only because the Plan was confirmed when Mr. Evans was alive and his debts, including debt to Defendant, were included in the Plan at the time of confirmation.

---

[11] Plaintiff's counsel also had access to Defendant's proof of claim.

Furthermore, Plaintiff's bankruptcy case is a voluntary chapter 13 case.[12] Although the chapter 13 confirmation order is a final order of the Court under which Plaintiff was required to make Plan payments, Plaintiff voluntarily filed the case, proposed the Plan, retains a non-waivable right to dismiss her case at any time, and could have moved to modify her Plan after Mr. Evans's death to reduce her Plan payments by the amount the Trustee was disbursing to Defendant each month. See United States v. Devall, 704 F.2d 1513, 1517 (11th Cir. 1983) ("Chapter 13 is a wholly voluntary proceeding. A debtor cannot be forced to submit his Social Security benefits to the jurisdiction of the Court . . . Moreover, a debtor under Chapter 13 has a non-waivable right to dismiss his case under Chapter 13. For this reason the debtor's benefits may not be subject to seizure in any legal process

---

[12] This is distinguishable from chapter 11 cases in which some courts have held bankruptcy payments to be involuntary for purposes of allocation of IRS payments. Jehan-Das, Inc. v. United States (In re Jehan-Das, Inc.), 925 F.2d 237, 238-39 (8th Cir. 1991); DuCharmes & Co. v. United States (In re DuCharmes & Co.), 852 F.2d 194, 196 (6th Cir. 1988). The Court also notes that the Eleventh Circuit, in an opinion that was vacated for mootness, rejected the position that the filing of a bankruptcy petition effectively characterizes all payments in a chapter 11 reorganization as involuntary. United States v. A&B Heating & Air Conditioning, Inc. (In re A&B Heating & Air Conditioning, Inc.), 823 F.2d 462, 466 (11th Cir. 1987), vacated and remanded for consideration of mootness, 486 U.S. 1002 (1988); see also In re Gilley Consulting Engineers, Inc., 74 B.R. 568, 571 (Bankr. N.D. Ga. 1987) (finding plan payments to IRS in chapter 11 reorganization voluntary because there is no "administrative or judicial seizure of money or property").

More recently, at least one court has found, with persuasive reasoning, that payments to the IRS under a *chapter 13 plan* are voluntary. In re Fielding, No. 13-43212-DML-13, 2015 WL 1676877, at *8 (Bankr. N.D. Tex. Apr. 10, 2015) (finding chapter 13 payments to IRS voluntary because chapter 13 is wholly voluntary, the debtors alone drafted and proposed their plan, there was no underlying order to pay the IRS, and the IRS had not seized any of the debtors' assets or garnished their wages); but see In re Frost, 47 B.R. 961, 965 (D. Kan. 1985) (finding chapter 13 payments involuntary). Although these cases considered the voluntariness and allocation of payments to the IRS under bankruptcy plans and are distinguishable from the present case, they are instructive.

against the debtor unless and except to the extent that he so desires."). For all these reasons, under the specific circumstances in this case, the Court concludes that Plaintiff's payment of the debt she did not owe to Defendant, with at least constructive knowledge of all material facts, via her chapter 13 Plan payments was voluntary.

Moreover, the evidence shows that Plaintiff had ample opportunity to stop the payments to Defendant for its claim but declined to do so. Candice Bar, 2021 WL 2470453, at *5 ("[I]f the defendant has an opportunity to refuse payment yet declines to do so, he cannot later seek to recover those payments."); see also Randazzo v. Harris Bank Palatine, N.A., 262 F.3d 663, 670-71 (7th Cir. 2001) ("Faced with a demand for a payment by a party with whom he had a contractual arrangement, [Plaintiff], rather than assert his rights under the contract in a timely and forthright manner, chose to accept the other party's interpretation of his legal rights. Indeed, this behavior is precisely the sort of conduct that the voluntary payment doctrine was designed to discourage."). As previously explained, Plaintiff could have dismissed her chapter 13 case at any time or could have modified her Plan to surrender her possessory interest in the Vehicle and reduce her Plan payments to cease any further payments to Defendant, as she was not liable for the debt on the Vehicle.[13]

---

[13] To the extent Plaintiff argues that Defendant had an obligation to refuse payment, her argument fails. She gives no support for this contention. The evidence shows that Defendant, after learning of Mr. Evans's death, moved for relief from the automatic stay (albeit after seven months during which Defendant's counsel was in communication with Plaintiff's counsel regarding the situation). This seems an appropriate response to the Court, especially because Defendant could not move to modify the Plan. Only Plaintiff, the Trustee, or the holder of an allowed unsecured claim could so do. See 11 U.S.C. § 1329(a). Even after Defendant moved

Instead, she continued to make Plan payments that included payments on the Vehicle—despite having, at minimum, constructive knowledge that she was not liable for them—and enjoy the use and possession of the Vehicle.

In sum, even if Plaintiff had properly asserted an unjust enrichment claim, the uncontroverted evidence shows that the voluntary payment doctrine applies in this case. Plaintiff is precluded from recovering the payments at issue because they were voluntarily made. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for unjust enrichment.

### d.   Defendant is Entitled to Summary Judgment on Plaintiff's Punitive Damages Claim.

Even if Plaintiff had properly stated a punitive damages claim in connection with her other claims, it fails for two reasons. First, a punitive damages claim depends upon the success of an underlying claim. Here, because the Court has found that both of Plaintiff's possible turnover and unjust enrichment claims fail, there is no underlying claim that could support a punitive damages claim. Second, punitive damages are recoverable only in the case of a successful underlying *tort* claim. Harris v. Fulton-DeKalb Hosp. Auth., 255 F. Supp. 2d 1347, 1359 (N.D. Ga. 2002) ("According to Georgia law, without a tort claim, punitive damages are simply not recoverable."). Neither turnover nor unjust enrichment

---

for relief, however, Plaintiff continued to make voluntary payments to Defendant and declined to modify her Plan.

are tort claims, so punitive damages are not recoverable in connection with either. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for punitive damages.

>    **e.    The Court Need Not Reach Defendant's Affirmative Defense of Failure to Mitigate Damages.**

Defendant's last argument for summary judgment is the affirmative defense of failure to mitigate damages. Defendant argues that Plaintiff has admitted she suffered no damages, but even if she did, she failed to mitigate them by failing to modify her Plan to stop making payments to Defendant.

However, because the Court has concluded Defendant is entitled to summary judgment based on Plaintiff's failure to state a claim, and in the alternative, the voluntary payment doctrine, and the fact that the failure to mitigate defense is not applicable to Plaintiff's claims,[14] the Court declines to reach such defense.

---

[14] Generally, there is a duty to mitigate damages in connection with a tort claim or a breach of contract claim. O.C.G.A. § 51-12-11 (duty to mitigate where a person is injured by the negligence of another); O.C.G.A. § 13-6-5 (duty to mitigate where a party is injured by breach of contract). Turnover under 11 U.S.C. § 542 is not a tort or breach of contract claim. Unjust enrichment is an equitable concept and a claim for unjust enrichment seeks *restitution*, not damages as they are normally measured, so there is no duty to mitigate. Tuvim v. United Jewish Communities, Inc., 285 Ga. 632, 635 (2009) (in Georgia, "[u]njust enrichment applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for"); Engram v. Engram, 265 Ga. 804, 806 (1995) (measure of unjust enrichment is the enhancement of value received by the beneficiary, which may be different from the cost of the benefit to the benefactor); Zampatti v. Tradebank Intern. Franchising Corp., 235 Ga. App. 333, 340 (1998) ("The measure of damages under quantum meruit or unjust enrichment is based upon the benefit conferred upon the defendant and not upon the cost to render the service or cost of the goods."); see also Ionian Corp. v. Country

Accordingly, based on the foregoing,

**ORDER**

**IT IS HEREBY ORDERED** that Defendant's Motion for Judicial Notice (A.P. ECF No. 64) is **GRANTED**; and

**FURTHER ORDERED** that Defendant's Motion for Summary Judgment (A.P. ECF No. 62) is **GRANTED**. The Court will enter a separate final judgment consistent with this Order.

**SO ORDERED**, this 30th day of September, 2025.

Michele J. Kim
Chief United States Bankruptcy Judge
Southern District of Georgia

---

Mut. Ins. Corp., 88 F. Supp. 3d 1187, 1200 (D. Or. 2015) (striking failure to mitigate defense to unjust enrichment claim because it was not a claim for damages).

AO 72A
(Rev. 8/82)